[No. 1264.]

THE STATE OF NEVADA, EL REL. MICHAEL O'MEARA, RELATOR, v. JOHN ROSS, AUDITOR OF STOREY COUNTY, NEVADA, RESPONDENT.

CONSTRUCTION OF STATUTES—INTENT.—The leading rule for the construction of statutes is to ascertain the intention of the legislature in enacting the statute, and the intent when ascertained will prevail over the literal sense. The intent may be ascertained from a consideration of the condition of the law before the enactment and the cause for the change.

MILITARY LAWS, CONSTRUED—AMENDMENT TO, REQUIRING OATH OF AL-, LEGIANCE, BINDING UPON MEMBERS—RETROACTIVE. — As the act of March 3, 1887, is amendatory of, and supplementary to, the general militia law of 1865, the original statute and the amendment must be construed together as one statute, and the requirement of an oath of allegiance in the amendatory law becomes in effect one of the provisions anticipated by section 55 of the original law, (Gen. Stat. 679,) and is expressly obligatory upon military companies organized prior to the passage of the act. The legislature, in adopting the amendment, intended to require a uniform pledge of allegiance from all the members of the militia.

IDEM—ARMORY RENT—MANDAMUS.—Application for a writ of mandamus to compel the county auditor to issue to the county treasurer his certificate of the allowance, by the board of county commissioners, of an expense bill to a militia company, as provided by Gen. Stat. 646. The refusal of the auditor to issue the certificate was based on the ground that the officers and members of the militia company had failed to take the oath of allegiance prescribed by Stat. 1887, 102, Sec. 2, and hence were not entitled to the benefits of Sec. 22 of the military law, providing that the county commissioners shall provide armories for volunteer organized military companies. Held, that, as the company had not taken the required oath, it was not entitled to armory rent, and the writ was denied.

IDEM — PROVISIONS OF LAW OBLIGATORY UPON MEMBERS. — The oath of allegiance was intended for the benefit of the state, and a failure to take it will not relieve the members of the company from their duty under the law.

IDEM — PENALTY — REFUSAL TO OBEY THE LAW. — No penalty is prescribed in the amendatory act, for failure to take the oath which the civil courts can enforce; but if refusing to allow armory rent is an imposition of a penalty, the members of the company have not obeyed the law, and, for this reason, cannot have the assistance of this court in obtaining the relief which they seek.

W. E. F. Deal, for Relator.

I. Section two of the act of 1887 does not apply to any member of the Emmett Guard except Rourke. All the others became members before the approval of the act, and the section

in plain terms only requires persons on becoming members to take the oath.

II. Section two does not impose any punishment or penalty for failure to take the oath, and the legislature did not intend any punishment, as they did not fix any. (Sedg. Const. Law, 287; *Maxwell* v. *State, ex rel. Baldwin,* 40 Md. 294; Potter's Dwarris, 247; *Com.* v. *Howes,* 15 Pick. 233; *Updegraff* v. *Com.* 6 Serg. & Raw. 6; *Wiggin* v. *Peters,* 1 Met. 129; 1 Chitty Cr. Law, 162.)

III. The amendment to section forty-three of the militia law provides the only condition upon the happening of which a forfeiture of state aid takes place. The Emmett Guard performed these conditions and is entitled to the warrant signed by the county auditor. Courts cannot fix a punishment other than that provided by law, nor can courts inflict punishment when the law provides none. In this case the law does provide a forfeiture and fixes a penalty for a failure of a militia company to meet at least once a month, for military instruction, and that is the only theory upon which a forfeiture takes place. The punishment is that given by statute and that alone. (Sedg. 76, 282.)

IV. The legislature did not intend that any punishment should follow the failure to take the oath, but left the matter to be regulated by the militia themselves.

*J. F. Alexander,* Attorney General, for Respondent.

By the Court, BELKNAP, J.:

The board of county commissioners of Storey county allowed a bill of the Emmett Guard for rent of an armory for the month of March, 1887, under section 22 of the military law, which makes it the duty of the board of county commissioners of any county in which public arms, accoutrements, or military stores are received for the use of any volunteer organized military company, to provide an armory for such company. (Gen. Stat. 646.) Bills of this nature are paid out of the general fund of the county, upon the presentation of the county auditor's certificate to the treasurer that the allowance has been made by the board of county commissioners. The auditor refuses to issue his certificate to this effect, and this proceeding in *mandamus* is brought to compel its issuance.

The Emmett Guard is a volunteer military company of Storey county, and was organized prior to the year 1865. It has complied with the various provisions imposed by the laws of the state, except this: its officers and members have failed to take the oath of allegiance prescribed by the act of the legislature supplementary to the military law, and approved March 3, 1887. The section containing the oath is as follows: "Sec. 2. All officers and members of the volunteer militia of this state, on becoming members and performing duty, must take and subscribe the following oath, which all commissioned officers thereof are authorized to administer: "I do solemnly swear that I will support the constitution of the United States and the constitution of the state of Nevada, and will maintain and defend the laws and all officers employed in administering the same. * * * " (Stat. 1887, 102.) The refusal of the auditor is based upon the failure of the officers and members of the company to take this oath. The question for determination, therefore, is whether a military company, whose officers and members have not taken the oath, is entitled to armory rent payable out of the public fund.

In behalf of the relator it is said that the requirement to take the oath applies to those only who have become members since the passage of the law, and not to those who were members of the organization prior to March 3, 1887—the date of enactment. The contention is based upon the following language of the statute: "All officers and members * * * on becoming members and performing duty * * * must take and subscribe the following oath. * * * "

The leading rule for the construction of statutes is to ascertain the intention of the legislature in enacting the statute, and the intent, when ascertained, will prevail over the literal sense. (Bac. Abr. "Statutes," 1, Secs. 5-10.) The intent may be ascertained from a consideration of the condition of the law before the enactment, and the cause for the change. Down to the time of the adoption of the supplementary military law no oath of allegiance had been required of the members of military companies. The purpose of the statute was to prescribe such oath. It is not to be presumed that this pledge of allegiance was to be exacted only from the new members of the militia, because no reason exists for a distinction in this regard between those who were members before the passage of the act, and

those who have since, or may hereafter, become members. The company in whose interest this proceeding is brought has had accessions to its membership since the passage of the law. If the view contended for were adopted, the anomalous result would be produced of requiring a pledge of allegiance from some, and not from other members of the same company. Probably other companies would be affected similarly. In the enactment of the provision, the legislature naturally intended to require a uniform pledge of allegiance from all of the members of the militia. Again: The law of March 3, 1887, is amendatory of, and supplementary to, the general military law of 1865. This law, at section 55, (Gen. Stat. 679), provides that "all volunteer companies * * * organized prior to the passage of this act shall be deemed to have been organized in compliance with its provisions and entitled to its benefits; but such companies * * * shall be required to comply with all the remaining provisions of this act * * *" The original statute of 1865 and the amendatory law of 1887 must be taken together as one statute, and the requirement relating to the oath in the amendatory law becomes in effect one of the provisions anticipated by the section above quoted. The requirement is, therefore, expressly obligatory upon military companies organized prior to the passage of the law of 1865. If the legislature had intended to exclude companies then existing from the operation of the law requiring the oath, such intention, in view of the provisions of section 55, would doubtless have been expressed.

The main question—whether armory rent shall be allowed—is also affected by the provisions of section 55. Referring again to this section, it will be seen that companies organized in compliance with the various provisions of the act are entitled to its benefits. It is fairly inferable from this provision that companies failing to comply with the law are not entitled to its benefits. Another view may be taken leading to the same result. The legislature has required from the officers and members of all militia companies an oath of allegiance. This requirement was intended as a qualification. Those lacking the qualification are not legally-appointed members of the militia. The rule of law is plain that the writ of *mandamus* will issue only to enforce a clear legal right. The members of the company have not the legal qualification, and are not therefore entitled to the writ. In determining that the company is not a

legally constituted military organization, it must not be understood that the provisions of the military law are not obligatory upon its members. The imposition of an oath was intended for the benefit of the state, and a failure to take it will not relieve the members of the company from their duty under the law.

It was urged that the statute prescribes no penalty for failure to take the oath. No penalty is prescribed which the civil courts can enforce. The military law commits to the governor of the state as commander-in-chief of the military forces the ultimate control of matters pertaining to the organization and discipline of the militia, to which this matter relates. He is authorized at any time " to disband any portion of the organized volunteer forces * * * which may evince a mutinous, disorderly or disobedient spirit. * * * " (Gen. Stat. 694.)

If it be claimed that refusing to allow armory rent is, in effect, imposing a penalty, the answer is, the members of the company have not obeyed the law, and, for this reason, cannot have the assistance of this court in obtaining the relief which they seek. *Mandamus* denied.