STATE OF NEVADA EMPLOYEES ASSOCIATION, INC., A Nevada Corporation, LOUIS H. ROBINSON, ELIZABETH L. AGASSI, ROBERT BYDALEK, STELLA M. DOERR, JACK FENKELL, ELIZABETH A. HAM, CAROL W. HERNANDEZ, MIRIAM LEWIS, MARNA B. LISTON, GERALDINE A. MURPHY, MITCHELL B. PORTER, ROGER A. SCHOEN, ROBERT A. SCHULTZ, SALLY M. TRUJILLO, CARMEN O. WILLIAMS, KATIE M. SCOTT, JUDY A. SCHAFFER AND JUDITH BUSCH, Appellants, *v.* STATE OF NEVADA, ex rel. ITS EMPLOYMENT SECURITY DEPARTMENT, and STANLEY P. JONES, Executive Director, in His Official and Individual Capacities, Respondents.

No. 21597

September 30, 1991                    817 P.2d 708

*Norah Ann McCoy,* Carson City, for Appellants.

*Crowell, Susich, Owen & Tackes,* Carson City, for Respondents.

## OPINION

*Per Curiam:*

In this case, we are required to interpret NRS 286.3007 and particularly subsection 3 of that statute, which states that "[i]f a state agency is required to reduce the number of its employees, it shall purchase credit for service pursuant to NRS 286.300 for any member who" qualifies in ways enumerated in the statute. The statute in question is set out in the margin.[1]

The State of Nevada Employees Association, Inc. (SNEA), together with a number of state employees, brought an action against the state claiming that the term "any member" as used in subsection 3 "clearly" obliges the state to purchase credit for retirement service for *all* employees in any agency which is required to reduce the number of its employees, provided that those employees meet the criteria of NRS 286.3007(3)(a)-(d).

SNEA's position is that *any* means all and that "any member" refers to all employees who happen to be part of an agency which is subject to a reduction in force. On the contrary, the state contends that "any member" means any *affected* member, that is to say, any member who is subject to or "victim" of a reduction in force and who "(a) Is eligible to purchase credit; (b) Is eligible

---

[1]NRS 286.3007 provides:

NRS 286.3007 Purchase by state agency of credit for service: Conditions.

1. A state agency shall pay the cost of purchasing credit for service pursuant to NRS 286.300 on behalf of a member if:

(a) The agency entered into an agreement with the member under which the member was employed upon the condition that the employer pay the cost of purchasing the credit; and

(b) The agreement to purchase the credit is in writing, becomes part of the personnel records of the employee and is approved in advance by the state board of examiners.

2. If a state agency is required to purchase credit pursuant to subsection 1, it shall not do so until the member has completed 1 year of service in its employ.

3. If a state agency is required to reduce the number of its employees, it shall purchase credit for service pursuant to NRS 286.300 for any member who:

(a) Is eligible to purchase credit;

(b) Is eligible to retire or will be made eligible by the purchase of the credit;

(c) Agrees to retire upon the completion of the purchase; and

(d) Has been employed by the agency for 5 or more years.

4. If a state agency is required to purchase credit pursuant to subsection 3, it shall pay 5 percent of the cost of purchasing the credit and an additional 5 percent of the cost for each year that the person has been employed by the agency in excess of the minimum requirement of 5 years.

to retire or will be made eligible by the purchase of the credit; (c) Agrees to retire upon completion of the purchase; and (d) Has been employed by the agency for 5 or more years." NRS 286.3007(3).

Although it can be argued that "any" as used in this statute means all of the members in an agency subject to force reduction, the only reasonable meaning under the circumstances is that given to the word by Senator Raggio's statement during the pendency of this legislation. Senator Raggio remarked that "[he] looked upon the provision in question as a vehicle where the state would buy enough service credit [for] the employee, if the state was terminating his employment, for him to qualify."

In Senator Raggio's mind the state's obligation was restricted to any member that the state was terminating. This is the way that we read the statute also. Just because the statute uses the word *any* does not necessarily mean that all employees of a given agency are entitled to the privilege created by the statute. There is no reason that can be derived from a reading of NRS 286.3007 why the necessary dismissal of one employee should "trigger" the granting of the subject retirement right to all employees within an agency.

In effect, SNEA takes the position that "any" means "all" and that that ends the controversy. In Midwest Livestock v. Griswold, 78 Nev. 358, 372 P.2d 689 (1962), this court was convinced that upon reading all of the applicable legislation the term "any person" could be read as any "producer of livestock." In the present case the trial court read "any member" in the same manner that Senator Raggio read it, that is to say, as any affected member—any member who was subject to reduction-in-force termination. This is the reasonable and correct interpretation of the statutory language; therefore, we affirm the judgment of the trial court.

In affirming the trial court's judgment, we affirm the judgment holding that "plaintiffs are entitled to no relief under their complaint based on their claimed contractual rights under NRS 286.3007," that is to say, no members who are not themselves subject to termination are entitled to the rights provided under the state statute. We also affirm the trial court's judgment that plaintiffs are not entitled to retirement credit acquisition. We do not adopt the declaration contained in paragraph 2 of the judgment as the declaration appears to go beyond the issues litigated in this lawsuit.