86 F.3d 1163
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Earl NISSEN, Plaintiff-Appellant,
v.
CHURCHILL COUNTY SCHOOL DISTRICT; Churchill County School
Board of Trustees; and Robert Quisenberry,
Defendants-Appellees.
 No. 95-15802.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 13, 1996.
Decided May 31, 1996.
 
 Before: ALARCON, BEEZER and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Dr. Earl Nissen appeals from the district court's entry of summary judgment in favor of Appellees Churchill County School District, et al. (collectively "Churchill") on Nissen's claims of age discrimination and violation of his due process rights. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 
 3
 * Nissen argues that the district court erred in finding that he was a probationary employee and granting summary judgment on his due process claim.[1] A grant of summary judgment is reviewed de novo. Jesinger v. Nevada Federal Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994). The standard used by the district court under Federal Rule of Civil Procedure 56(c) also governs our review. Id. We determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Id.
 
 
 4
 In order to establish a due process claim, Nissen must first show that he had a protected property interest in his job. Clements v. Airport Authority of Washoe County, 69 F.3d 321, 331 (9th Cir.1995) (citing Board of Regents v. Roth, 408 U.S. 564 (1972)). To have a property interest, Nissen "clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Green v. Babbit, 64 F.3d 1266, 1271 (9th Cir.1995) (quoting Roth, 408 U.S. at 577). We look to state law to determine whether a protected property interest exists. Clements, 69 F.3d at 321.
 
 
 5
 Nissen's employment is governed by Nevada Revised Statute Chapter 391.[2] Chapter 391 divides licensed school district employees into two categories: "probationary" and "postprobationary." Under the version of section 391.3197(1) in effect during the relevant period, "[a] probationary employee is employed on a contract basis and has no right to employment after a probationary contract year." Nev.Rev.Stat.Ann. ("NRS") § 391.3197(1) (Michie 1991). The parties agree that if Nissen was a probationary employee, his due process claim fails for want of a legitimate interest in future employment. See McCracken v. Elko City School Dist., 747 P.2d 1373, 1375 (Nev.1987) (probationary teacher has "only a unilateral expectation of employment and no claim or entitlement to it.").
 
 A.
 
 6
 Nissen argues that his employment with the Nye County School District prior to his move to Churchill entitled him to postprobationary status. Chapter 391 provides that "any postprobationary employee of another school district of Nevada who is employed by another school district must be allowed to continue as a postprobationary employee...." NRS § 391.31965.
 
 
 7
 Before the district court, Nissen presented a letter from the Nye school district confirming his employment from August 22, 1988 until November 27, 1990, when he left to work for Churchill.[3] The letter from Nye does not state whether Nissen acquired postprobationary status. In fact, it does not even specify the nature of Nissen's employment. It is not sufficient to raise a genuine issue of material fact regarding Nissen's status, and Nissen's conclusory assertion that he did in fact have postprobationary status in Nye does not save his claim. Hansen v. United States, 7 F.3d 137, 138 (9th Cir.1991) (nonmoving party cannot rely on "conclusory allegations unsupported by factual data to create an issue of material fact."). Nissen does not declare that Nye ever complied with the statutory prerequisites to postprobationary status under Chapter 391.
 
 B.
 
 8
 Nissen argues that even if we do not determine that he had postprobationary status in Nye, he attained postprobationary status during his employment with Churchill.
 
 
 9
 After the filing of the briefs in this appeal, the Nevada Supreme Court had occasion to interpret the version of Chapter 391 in effect during the time relevant here. Clark County School Dist. v. Harris, 913 P.2d 1268 (Nev.1996) (per curiam). The court construed the statute to provide that a teacher who worked for 90 days during the 1990-91 school year did not achieve postprobationary status when he received a notice of reemployment before the May 1, 1991 statutory deadline because he had not undergone the three requisite evaluations. Id. at 1271 (citing NRS § 391.3197(2)). The court reasoned that the May 1 deadline follows the three evaluations required before December 1, February 1 and April 1 of the school year, "reflect[ing] the legislature's intent to have the notice of reemployment issued after three performance evaluations are completed." Id. The court stated that the three evaluations "ensure that unqualified teachers are not vested with the protections of postprobationary status imprudently...." Id. (citation omitted).
 
 
 10
 During Nissen's employment, Churchill did not comply with the May 1 notice requirement that is a prerequisite to postprobationary status under NRS § 391.3197(2).[4] Neither did Churchill evaluate Nissen three times in accordance with NRS § 391.3125, governing probationary employees. Nissen did not attain postprobationary status during his employment with Churchill. The district court correctly granted summary judgment in favor of Churchill on this issue.
 
 II
 
 11
 Nissen challenges the district court's grant of summary judgment on his claim under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-34. Section 623(a)(1) makes it unlawful "to fail or refuse to hire or to discharge any individual or to otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." This provision protects persons between 40 and 70 years of age. 29 U.S.C. § 631(a).
 
 
 12
 In order to prevail on his claim of disparate treatment, Nissen must present direct or circumstantial evidence of discriminatory intent. Washington v. Garrett, 10 F.3d 1421, 1432 (9th Cir.1993) (citation omitted). Nissen bears the initial burden of establishing a prima facie case of discrimination. Wallis v. J.R. Simplot Co., 26 F.3d 885, 888-89 (9th Cir.1994) (ADEA and Title VII involve same burdens of proof and persuasion). He may establish a prima facie case by direct evidence of discriminatory intent, id. at 889, or by factors creating a presumption of discrimination that shifts the burden of production to Churchill, "who must offer evidence that the adverse action was taken for other than impermissibly discriminatory reasons." Id. (quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981)). Once Churchill fulfills this burden, Nissen must show that Churchill's alleged reasons are pretexts for discrimination. Lam v. University of Hawaii, 40 F.3d 1551, 159 (9th Cir.1994) (citation omitted). Nissen bears the ultimate burden of proof. Id. at 1564 (citation omitted).
 
 
 13
 Nissen presented no direct evidence of discriminatory intent. In order to establish a prima facie circumstantial case of disparate treatment, Nissen must show he was:
 
 
 14
 (1) a member of a protected class [age 40-70];
 
 
 15
 (2) performing his job in a satisfactory manner; (3) discharged; and (4) replaced by a substantially younger employee with equal or inferior qualifications.
 
 
 16
 Wallis v. J.R. Simplot, 26 F.3d at 891 (citation omitted). Churchill's summary judgment motion did not raise factors one, three or four.
 
 
 17
 The district court found that Nissen had not presented evidence that he was performing satisfactorily. The court also found that even if Nissen had been able to present a prima facie case, he had presented no evidence that Churchill's legitimate reasons for not reemploying him were pretexts for discrimination.
 
 
 18
 Satisfactory job performance is both a factor in Nissen's prima facie case and the asserted reason for Churchill's decision not to rehire Nissen. The issue reduces to whether, viewing the evidence in the light most favorable to Nissen, there is a genuine issue of fact regarding his performance. Nissen asserts that his affidavit, letters supporting him, a petition signed by Churchill employees and an April, 1992 letter of recommendation written by Superintendent Quisenberry create issues of fact.
 
 
 19
 Churchill's final evaluation of Nissen listed two areas of satisfactory performance: "PERSONNEL SUPERVISION" and "CURRICULUM AND INSTRUCTION." It listed three areas as unsatisfactory: "SCHOOL MANAGEMENT," "COMMUNITY RELATIONS" and "INDIVIDUAL PERFORMANCE/PERSONAL GROWTH OBJECTIVES."
 
 
 20
 Contrary to Nissen's argument, his affidavit and a letter from an employee who worked with him do not rebut the comment under the school management section that he "responded [to the Department of Education] on behalf of the district without first apprising his supervisors of the report," and that he "has at times not responded in a timely fashion with district required reports and has numerous times not followed fiscal procedures...."
 
 
 21
 Nissen also presented no evidence specifically countering the comments in the "INDIVIDUAL PERFORMANCE" section of the evaluation: "Dr. Nissen's performance has overall been unsatisfactory. He has been unwilling to accept the direction, suggestions and recommendations provided to him from the superintendent and two assistant superintendents." The section also notes Nissen's lack of credibility.
 
 
 22
 The letters and petition offered by Nissen are sufficient to create a factual issue regarding community relations, but the issue is not material. Nissen argues that this issue of fact tilts the evaluation to an overall rating of "satisfactory," and that the district court improperly weighed evidence by concluding otherwise. The evaluation, however, does not reflect a mechanical balancing of the five areas of performance. It has no blank for tabulating an overall score. On the face of the document, the "INDIVIDUAL PERFORMANCE" clearly stands out as the decisive section. It is also consistent with earlier criticism of Nissen by the superintendent that came several months after the April 1992 letter of recommendation.[5]
 
 
 23
 Nissen does not create an issue of fact by producing evidence regarding one satisfactory area when other areas formed the basis of decision. See Merrick v. Farmers Ins. Group, 892 F.2d 1434, 1438 (9th Cir.1990) (because employer clearly focused on plaintiff's leadership skills, satisfactory ratings in other areas did not create a triable issue). Nissen has presented no evidence from which a reasonable jury could conclude that his performance was satisfactory or that Churchill's reasons for not reemploying him were pretextual. Wallis, 26 F.3d at 889.
 
 
 24
 We affirm the district court's grant of summary judgment in favor of Churchill on Nissen's ADEA claim.
 
 
 25
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Nissen complains that Churchill failed to include Nissen's alleged lack of a property interest in the Joint Pretrial Order and failed to raise the issue until its reply brief on its motion for summary judgment. The record shows otherwise. Churchill included as a question of law in the Joint Pretrial Order, "Whether Plaintiff has a constitutionally protected property interest in his employment ...?" Churchill also raised this issue in its opening memorandum in support of summary judgment
 
 
 [2]
 Churchill argues that its contract with Nissen controls his expectation of future employment because Nev.Rev.Stat. § 391.3116 allows administrators to contract out of the requirements of Chapter 391. We disagree. Section 391.3116 excepts from the requirements of Chapter 391 only those contracts negotiated pursuant to collective bargaining under Chapter 288, and the parties agree that Nissen's contract was not negotiated under Chapter 288
 
 
 [3]
 This letter was among several documents submitted by Nissen after the hearing on Churchill's motion for summary judgment. Because the district court discussed these documents in its order granting summary judgment, we consider the documents here
 
 
 [4]
 We reject Nissen's interpretation of section 391.3197(2) to allow delivery of the contract after May 1. "Notices of reemployment must be in writing and must be issued by the school district before May 1 of the school year." Clark County School Dist. v. Harris, 913 P.2d at 1270 (citing NRS § 391.3197(2))
 
 
 [5]
 Superintendent Quisenberry wrote Nissen concerning his job performance on November 17, 1992 and December 7, 1992. The November letter referenced a "long list of distortions [Quisenberry had] experienced with [Nissen]." The December letter listed a series of areas in which Quisenberry found Nissen's performance unsatisfactory: disloyalty, vulgarity, distortions of the truth, bad judgment, lack of cooperation, failure in negotiations with employee group bargaining and noncompliance with rules and regulations